UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$170,000 IN U.S. CURRENCY,

    Defendant.

Case No. _____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The plaintiff, United States of America, through its attorneys Andrew M. Luger, United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. This is an action to forfeit and condemn to the use and benefit of the United States of America $170,000 in U.S. Currency for violations of 21 U.S.C. § 841 *et. seq*.

**THE DEFENDANT *IN REM***

2. The defendant *in rem* is $170,000 in U.S. Currency ("the Defendant Currency") seized from Damion Toriano White on August 6, 2024. The Defendant Currency is in the custody of the United States Marshals Service.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Currency. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Currency under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant Currency pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Currency is located in this District.

## FACTS

6. On August 6, 2024, members of the Drug Enforcement Administration (DEA) Minneapolis Group 73 and Minneapolis/Saint Paul Airport Police Department (APD) narcotics unit received information from the Transportation Security Administration ("TSA"). TSA informed DEA that Damion Toriano White, who had entered a checkpoint at 1:47 pm had advised TSA Personnel that he was carrying approximately $100,000 in U.S. Currency.

7. White was travelling to Las Vegas. His flight was scheduled to depart at 2:38 pm.

8. White has a prior criminal history that includes convictions for possession with intent to distribute cocaine, distribution of crack cocaine, and battery.

9. Las Vegas, Nevada is a source city and state for the production and distribution of narcotics. Airline tickets purchased at the "last minute" are common with individuals involved in narcotics trafficking and/or trafficking of narcotics proceeds. Often, they believe they will avoid law enforcement intervention if they wait until the last minute to purchase their airfare.

10. After receiving the information from TSA, Task Force Officer Irvin and other members of the Airport Police Department responded and went to Gate 18, from which White's flight was scheduled to depart.

11. APD was informed that White was flying standby and had not boarded the flight. Officers later observed him in the gate area wearing a red hooded sweatshirt. White approached the podium and spoke briefly with the gate agent.

12. As White walked away from the podium, Detective Kennedy and her Narcotics Detection K-9 partner Ozzy were conducting vapor wake screening of passengers in the gate area of G-18. K-9 Ozzy sniffed at least 30 other people in and around the gate area with no change in behavior.

13. After White walked away from the counter, Ozzy had just finished checking the line of passengers who were waiting to board the flight. Ozzy walked behind White and began to show an obvious change of behavior. Ozzy then sniffed

White and gave a positive alert for the odor of narcotics emitting from him. TFO Irvin spoke with the gate agent who confirmed it was White.

14. TFO Irvin contacted White and advised him that he was not in any trouble. TFO Irvin told White that he had a few-follow up questions regarding the large amount of currency he was traveling with. White immediately stated the money came from a Richard Mille watch he had sold earlier that day.

15. White stated he sold the watch to Lake Side Diamond in Prior Lake, Minnesota and had been paid in cash. White said he didn't know why the deal was done in cash and that detectives needed to ask the owner of Lake Side Diamond (JB).

16. TFO Irvin spoke with JB, who said that the transaction was made in cash at White's request. TFO Irvin asked JB why he didn't use a safer form or payment such as a check or wire transfer. JB responded that Checks can bounce, and wire transfers do not always work. JB said that he had sold that same watch to White about a year earlier for $180,000 and had just bought it back for $150,000.

17. In a follow-up interview JB said he provided White the $150,000 in banded stack inside of a plastic bag.

18. Officers performed a separate K-9 sniff on the currency, which was in what appeared to be 15 banded stacks consistent with $10,000 each inside of a plastic bag. This sniff was done away from White to see if Ozzy was alerting to White or the odor of narcotics on the currency. Ozzy gave a positive alert for the odor of narcotics emitting from the currency that was in White's bag.

19. Based on, among other things, the positive narcotics K9 alert on the currency, and based on the inconsistencies in White's and JB's stories regarding the currency, White's criminal history and travel plan, officers determined that there was probable cause to seize the currency as proceeds of, or property used or intended to be used to facilitate, violations of the Controlled Substances Act. An additional two banded stacks of U.S. Currency, which totaled $20,000, were found in White's carry-on separate from the $150,000 in U.S. Currency in the plastic bag.

20. Additional investigation has been conducted. In connection with that investigation, a close contact of White's was interviewed. That person verified that White has been dealing narcotics including cocaine since at least 2020.

21. This person verified that they were aware that, in 2020, White had been selling exotic strains of marijuana and wanted to sell cocaine. White asked them for assistance locating and acquiring cocaine for sale.

22. The close contact of White's knew others who were engaged in cocaine distribution and admitted having supplied 20 kilos of cocaine to White starting in 2020.

23. Although White purports to make money gambling, the contact stated that White's gambling typically involves proceeds of narcotics sales, and that he loses more money than he wins when gambling.

24. The contact further stated that White had initially purchased the Richard Mille watch that he sold in August 2024 with proceeds of illicit narcotics sales.

25. White does not appear to have significant income from sources other than narcotics dealing and gambling.

26. As a result, any proceeds White may have obtained from the sale of the Richard Mille watch would be traceable to proceeds of narcotics sales. In addition, White's sale of the watch constitutes a financial transaction that involved more than $10,000 of proceeds of Specified Unlawful Activity, namely violations of the Controlled Substances Act.

## BASIS FOR FORFEITURE

### Count 1
### 21 U.S.C. § 881(a)(6) (Proceeds Traceable to Controlled Substance Act Violations)

27. Pursuant to 21 U.S.C. § 881(a)(6), the United States is authorized to forfeit "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . . [and] all proceeds traceable to such an exchange."

28. The defendant $170,000 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

### Count 2
### 18 U.S.C. § 981(A)(1)(A) (Violation of 18 U.S.C. § 1957)

29. Pursuant to 18 U.S.C. § 981(a)(1)(A), the United States is authorized to forfeit "any property, real or personal, involved in a transaction . . . in violation of section 1956 [or] 1957… of this title, or any property traceable to such property."

6

30. 18 U.S.C. § 1957(a) prohibits among other things, knowingly engaging in a monetary transaction in criminally derived property of a value of more than $10,000, when such property derived from a specified unlawful activity.

31. Violations of the Controlled Substances Act are specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(A).

32. The Defendant Currency is subject to forfeiture because it was involved in, or is traceable to property involved in, a violation of 18 U.S.C. § 1957.

## CLAIM FOR RELIEF

33. The plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendant in rem, that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant in rem, that the Defendant in rem be forfeited and condemned to the United States of America, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated: 1/7/2025

ANDREW M. LUGER
United States Attorney

*s/Craig Baune*
BY: CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: 612-664-5600
Craig.baune@usdoj.gov

## VERIFICATION

I, Michael Cohen, verify and declare under penalty of perjury as follows:

I am and have been a Special Agent for the Drug Enforcement Administration ("DEA") since 2015. I have read the foregoing Verified Complaint In Rem and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as a DEA Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 1/7/2025

                                                 *s/Michael Cohen*
                                                 MICHAEL COHEN
                                                 Special Agent
                                                 U.S. Drug Enforcement Administration